**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CORNELL LOWERY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-235** |
| | : | |
| **MICHAEL SCHNADER, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**HENRY, J.** **AUGUST 7, 2026**

Plaintiff, Cornell Lowery, a prisoner incarcerated at SCI Phoenix ("SCIP"), filed this civil rights action against Michael Schnader, the laundry supervisor at SCIP. The Court construed this claim to be a First Amendment retaliation claim against Schnader, who Lowery alleges fired him from his prison laundry job because he left the area to attend Jummah religious services. The case proceeded through discovery, and Defendant Schnader filed the instant Motion for Summary Judgment. Despite being ordered to do so, Plaintiff Lowery failed to respond to Defendant's Motion. For the reasons that follow, I will grant Schnader's motion.

## I. FACTUAL BACKGROUND

Defendant Michael Schnader is the laundry supervisor at SCIP where Lowery was employed. ECF No. 2, Complaint ("Compl."), p. 2. On January 19, 2024, Lowery claims that he received a misconduct from Schnader for leaving the laundry early to attend Jummah religious service, and that Lowery allegedly lost his prison job as a result. (Compl. at 4-5, 7.)

Pursuant to the Religious Activities Policy and Procedures Manual at SCIP, DC-ADM 819, "[u]pon request, a General Population inmate is to be excused, without pay from work, up to once a week to attend one scheduled primary religious gathering." *See* ECF No. 32-1, DC-

ADM 819, Section 1(A)(6)) ("DC-ADM 819"). On January 19, 2024, Lowery received Misconduct D115676 for refusing to obey an order and refusing to work. *See* ECF 32-2, Misconduct D115676 ("Misconduct"). The Misconduct provides Schnader's version of events and states that Lowery "was told on 1/19/24 at 11:45 that work was not done for the day and he was given a direct order to stay until at least 1300 to finish the job for the day. As we were walking outside from the dirty side of laundry to the clean side, Inmate Lowery saw other inmates on the walk and said, 'Yeah fuck this I'm out.' I proceeded (sic) to strip the inmates to send them to the clean side of laundry and Lowery made the decision to leave for the day after being told that he was needed and that there would be consequences if he left." *Id.*

During Lowery's deposition, he testified that he is required to work in the laundry for 6 hours on a "regular day" and stay until at least 1:00pm. *See* ECF No. 32-3, Lowery Deposition Transcript ("Lowery Dep."), p. 45. The 6 hours are mandatory unless the inmate has a religious service to attend. *Id*., p. 36. On January 19, 2024, Lowery left work at 10:40 a.m. but did not attend a religious ceremony that day because it was cancelled. *Id*., p. 42, 55. However, despite Schnader's contention to the contrary, Lowery testified that he was never told that the religious service had been cancelled prior to leaving the laundry that day. *Id*., p. 40-41, 51, 53-54. Rather, Lowery testified that he found out about the cancellation when he arrived back at his unit. *Id.*

As set forth in Lowery's Misconduct, Schnader claims that he gave Lowery a direct order to stay at the laundry facility until at least 1:00pm to finish work, and that Lowery left the laundry facility prior to 1:00 p.m. and without his supervisor's permission. *See* Misconduct; Lowery Dep., p. 42. Lowery received a disciplinary hearing for this incident, and the hearing examiner found by a preponderance of the evidence that he was guilty of refusing to work. Misconduct, p. 2. Lowery appealed, and the SCIP Program Review Committee upheld the

hearing examiner's decision of guilt. ECF No. 32-5, Program Review Committee Action. This result was affirmed by both the Superintendent and the Chief Hearing Examiner. ECF No. 32-7, Superintendent's Response to Appeal of Misconduct; ECF No. 32-8, Final Review for Appeal of Misconduct.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). In opposing summary judgment, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings" and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). "[I]nstead, he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

## III. ANALYSIS

### A. Lack of Opposition

First, I note that Schnader's Motion for Summary Judgment, Statement of Material Facts and Brief in Support were filed on February 5, 2026, and served on Lowery via U.S. Mail on February 6, 2026. Accordingly, Lowery's opposition was due on or before February 20, 2026. On March 19, 2026, having received no opposition to Schnader's Motion, I ordered Lowery to show cause by April 20, 2026, why Schnader's Motion for Summary Judgment should not be granted. ECF No. 34. As of the date of this opinion, Lowery has yet to file any opposition to Schnader's motion for summary judgment.[1] However, as Local Rule 7.1(c) of the Rules of Civil Procedure for the Eastern District of Pennsylvania allows the court to grant a motion as uncontested in the absence of a timely response **except** a motion for summary judgment under Fed. R. Civ. P. 56, I must perform a merits analysis of Schnader's motion, despite the lack of opposition.

### B. First Amendment Retaliation

As set forth in my opinion in this case dated February 11, 2025, all of Lowery's claims were dismissed except for a First Amendment retaliation claim against Defendant Schnader. ECF No. 6. Lowery's First Amendment claim is based on the allegation that Schnader issued him a misconduct and stripped him of his laundry job to retaliate against Lowery for exercising his right to practice his religion. To establish a claim for First Amendment retaliation, an inmate must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse

[1] According to the Pennsylvania Department of Corrections Inmate Locator, Lowery continues to be housed at SCI-Phoenix, so there are no concerns regarding his receipt of the motion and the show cause order. See https://inmatelocator.cor.pa.gov/#/Result (last visited August 5, 2026).

action at the hands of prison officials; and (3) the constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Once a prisoner has met these 3 prongs and established his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that "it would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Id*. at 334.

There is no question that the exercise of religion is an activity protected by the First Amendment. *Bhatti v. Republican Caucus of Penna. House of Representatives*, No. 18-2178, 2020 WL 3412661, at *6 (M.D. Pa. June 22, 2020). However, it has been stated that because retaliation claims can be easily fabricated, courts must view prisoners' retaliation claims with sufficient skepticism to "avoid becoming entangled in every disciplinary action taken against a prisoner." *Laurensau v. Pluck*, 2013 WL 4779010, at *11 (W.D. Pa. Sept. 5, 2013) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996) and *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995)).

As to Lowery's *prima facie* case for retaliation, he is clearly entitled to exercise his religious rights while incarcerated, and he did receive a misconduct, which is an adverse action by prison officials. There is some question as to whether Lowery's constitutionally protected exercise of religion was the substantial or motivating factor in his receipt of the misconduct, but for purposes of this motion, I will assume it was and that Lowery can make out the *prima facie* case for retaliation. The burden therefore shifts to Schnader to prove by a preponderance of the evidence that he would have taken the same disciplinary action against Lowery in the absence of the alleged protected activity "for reasons reasonably related to penological interests." *Rauser*, 241 F.3d at 334.

Defendant produced evidence that Lowery received the misconduct in question because he refused to obey an order from Schnader to stay at work until at least 1:00 p.m., leaving the laundry after Schnader told him that he was still needed. *See* Misconduct. Because Lowery left work without his supervisor's permission, he was charged with refusing to obey an order and refusing to work. Defendant produced evidence to support those charges, and Lowery partially supported them himself, testifying that he is required to work in the laundry until 1:00 p.m. on a "regular day," and that on January 19, 2024, he left work at 10:40 a.m. and was back in his block and in the shower by 11:00 a.m. Lowery Dep., pp. 42, 45, 55.

Further, a hearing examiner heard Lowery's appeal from the misconduct and found him guilty of refusing to work. See ECF 32-2. Lowery appealed to the Department of Corrections Program Review Committee, which upheld the decision of the hearing examiner, ECF No. 32-5, as well as the Superintendent of the facility, ECF No. 32-7, and the Chief Hearing Examiner of the Pennsylvania Department of Corrections, ECF No. 32-8, both of whom upheld the Hearing Examiner's decision and/or denied his appeal. Numerous levels of review all supported the claim that the misconduct was issued because Lowery refused to obey an order and refused to work, not in retaliation for his exercise of religion.

In short, the evidence supports the conclusion that Lowery left work prior to 1:00 p.m. without his supervisor's permission and was issued a misconduct for violation of prison rules. Further, a legitimate penological interest in the safety of everyone in the facility requires inmates to obey their supervisors at all times. "Given the quantum of evidence of Plaintiff's misconduct, [I] cannot say that the prison officials' decision to discipline [Lowery] for his violations of prison policy was not within the 'broad discretion' we must afford them." *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002) (quoting *Thornburg v. Abbott*, 490 U.S. 401, 413 (1989)). Accordingly, I

find that there is no genuine issue of material fact that the misconduct issued to Lowery was "reasonably related to legitimate penological interests," and that Lowery would have been disciplined for refusing to obey his supervisor even if he had attended a religious service as planned.

## IV. CONCLUSION

For the reasons set forth above, Defendant Schnader's Motion for Summary Judgment is granted, and this case is dismissed. An appropriate order follows.